# EXHIBIT
# J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH AMATO, GARY ASHBECK,
ELLEN BARFIELD, DAVID BARROWS,
MICHAEL BECKER, DIANE BEENY,
JOHN BEHLING, RUTH BENN, BENJAMIN
BERNARD, ARUN BHALLA, KATHLEEN
BURICK, DANIEL BURNS, LINNEA CAPPS,
THOMAS CATCHPOLE, JOAN CAVANAGH,
MARC F. CHURCH, JEFFERY J. COHEN, MARK
COLVILLE, WILLIAM CONWELL, COLLEEN
COOK, SUSAN CRANE, POLLY A. DAVIES,
FELTON DAVIS, PATRICIA DEBRUHL,
PETER DEMOTT, DEWAYNE DICKERSON,
MATTHEW DIETZEN, WALTER DITMAN,
LOIS A. DOGGETT, JASON DORAIS,
SUSAN D'ORNELLAS, ALEXANDER HOLLEY
DRUMMOND, STEVEN EKBERG, CALLA EVANS,
ADAM FEINSTEIN, JAMES FLYNN, HOWARD
GALE, STEPHEN GAMBOA, GABRIEL GASTER,
TOBIAH GASTER, EDWARD GIBBONS, JOHN THEODORE
GLICK, CHARLES GOLDBERG, OREN GOLDENBERG,
DAVID GORDON, BARRETT Z. GROSS, RICHARD
HARDIE, ED HEDEMANN, KATHLEEN D.
HERNANDEZ, ROGER HILL, EDWARD
HOTCHKISS, RYAN D. HOTTLE, JANET S. HOWE,
BENJAMIN HUNT, THOMAS IVORS, JENNIFER
JANNEY, DWIGHT JENKINS, MICHAEL JOSEPH,
PEPPER JUDD, SARAH KANOUSE, JAY KANTOR,
BRIAN KAVANAGH, KIMBERLY KERN, EDWARD
F. KINANE, JOSHUA KNAPP, MATTHEW KOCEK,
KATHARINE KRASSAN, LAURA KRESSLY,
ANDREW LAKEN, TESSA M. LALONDE, JARED
LANCTOT, JOHN LARSON, JONOTHAN LOGAN,
MARIELLE LOVECCHIO, JAY MARX,
RYAN MCGEE, BARBARA ANN MEISINGER,
TRISTAN MIGLIORE, JOHN M. MILLER,
ZACHARY C. MILLER, CHRIS G. MURRAY,
MARK NECHAY, BLOSSOM NICINSKI,
JAMES NOONAN, DANIEL O'REILLY-ROWE,
MICHAEL PALMER, CHRISTINE PARDEW, LAWRENCE
PARIS, DANIEL M. PARROTT, NATHANIEL PARRY,
JEFFREY A. PATERSON, SHANNON PETRELLO,
STEPHEN PETRICK, KATHERINE POE,

**THIRD**
**AMENDED**
**COMPLAINT**

**JURY TRIAL DEMANDED**

**05 Civ. 8453 (KMK) (JCF)**

LAURA RAYMOND, BRUCE RENWICK,
ADAM RICHINS, SHANA RIGBY,
DEBORAH RIVERBEND, RAYMOND ROBINSON,
LAMBERT ROCHFORT, RONALD E. ROSENBERG,
DEVON RUECKNER, RONALD W. SAN MARCHI,
FRANK SANCHEZ III, STEVEN SCOFIELD,
ANAIS SENSIBA, GORDON WILLIAM SENSIBA,
ROBERT J. SIEGEL, SELMA SPRITZER,
ANDREW ST. LAURENT, MORA MI-OK STEPHENS,
THERESA SWINK, SARAH TEPSIC, JOHN TRINKL,
ANN TRUDELL, CHRISTY ANN TURNER,
ZACHARY VREELAND, FRANTZ WALKER,
JAMES J. WHITE, JAMES WILLIAMSON,
JAMES WILSON, TERAN WILSON,
JENNIFER WONG, MATTHEW WRIGHT,
RAISSA WU, and THOMAS ZAMBECK,

                    Plaintiffs,

          -versus-

THE CITY OF NEW YORK; MICHAEL
BLOOMBERG, Mayor of the City of New York,
RAYMOND KELLY, Commissioner of the New
York City Police Department,, JOHN COLGAN, Assistant
Chief of the New York City Police Department,
TERRENCE MONAHAN, Assistant Chief of the New
York City Police Department, THOMAS GALATI,
STEPHEN HAMMERMAN, THOMAS DOEPFNER,
RUBY MARIN-JORDAN, KERRY SWEET, DAVID
COHEN and JOHN and JANE DOES,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

1.      This is an action to vindicate the civil rights of individuals who engaged in peaceful and lawful protest during the Republican National Convention and were arrested as a result of a New York Police Department (" NYPD") policy and practice of indiscriminately arresting groups of people who were peacefully assembled on City sidewalks and who either were participating in or were in the vicinity of demonstrations.

2.      During the Republican National Convention ( the "RNC"), which was held in New York City between August 30, 2004 and September 2, 2004, the NYPD arrested more than 1,800 people in connection with peaceful protests held throughout the City.  The great majority of those charges have now been dismissed.  Because the NYPD adopted mass arrest tactics during the duration of the Convention – including through the use of mesh nets to enclose groups of people on sidewalks – rather than making arrests after a determination of individual probable cause, the NYPD ended up arresting many people who were engaged in lawful protests activity or who were not even demonstrators.

3.      The plaintiffs, who were arrested on Tuesday, August 31,2004, in the vicinity of the World Trade Center site, were victims of those tactics.  The false arrests followed negotiations between protest organizers and NYPD officials, who authorized a peaceful march from the area near the PATH train station entrance, across Church Street, and on the sidewalks along Fulton Street, toward Broadway, heading toward the Convention site. Plaintiffs began to march under police supervision, but the front of the march only traveled about half a block down the Fulton Street sidewalk.  The group was then stopped and, without any warning, were surrounded by police officers, who enclosed them in orange mesh nets. Throughout the brief march up the Fulton Street sidewalk, plaintiffs followed all directions and instructions given by the police

officers. At no time were plaintiffs advised to disperse, advised that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

4.      Plaintiffs were among 227 persons who were then placed under arrest, handcuffed, and taken to a former bus depot known as Pier 57, which NYPD had converted into an arrest holding facility for protestors arrested during the Republican National convention.

5.      The floor of Pier 57 was still covered with the grease, grime, and the toxic chemicals resulting from its use as a bus depot. Because there were few benches on which detainees could sit or lie, plaintiffs were forced to stand during most of the many hours they were held at Pier 57 or to lie on the noxious floor.

6.      Plaintiffs were finally taken on Wednesday, September 1, 2004 to the New York City criminal courts for processing. Eventually – and in many instances only as a result of court orders – people were released, with some having spent almost two days in police custody.

7.      On October 6, 2004, the manhattan District Attorney's office announced that it would dismiss all of the 227 prosecutions arising out of the August 31 arrests on Fulton Street.

8.      THE CITY OF NEW YORK's policies and practices of (1) making mass arrests of persons lawfully participating in, or observing, demonstrations, and (2) detaining those arrested on minor offenses for prolonged periods of time in unhealthy conditions violated the federal and state constitutions and New York statutory and common law.

## JURISDICTION AND VENUE

9.      This civil rights action is authorized by 42 U.S.C. § 1983. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988. The court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343 (a)(4).

10.     Venue is proper pursuant to 28 U.S.C. § 1391(b) in that plaintiffs' claims arise in

the Southern District of New York.

11.     This court has supplemental jurisdiction over all state constitutional and state law claims pursuant to 28 U.S.C. § 1367(a).

## NOTICES OF CLAIM

12.     Plaintiffs, JOSEPH AMATO, ELLEN BARFIELD, DAVID BARROWS, DIANE BENNY, BENJAMIN BERNARD, KATHLEEN BURICK, DANIEL BURNS, THOMAS CATCHPOLE, MARC F. CHUCH, COLLEEN COOK, POLLY A, DAVIES, FELTON DAVIS, PATRICIA SEBRUHL, PETER DEMOTT, MATHEW DIETZEN, WALTER DITMAN, SUSAN D' ORNELLAS, ALEXANDER HOLLEY DRUMMOND, ADAM FEINSTEIN, JAMES FLYNN, HOWARD GALE, STEPHEN GAMBOA, TOBIAH GASTER, JOHN THEODORE GLICK, DAVID GORDON, BARRET Z. GROSS, KATHLEEN D. HERNANDEZ, JANET S. HOWE, BENJAMIN HUNT, THOMAS IVORS, JENNIFER JANNEY, DWIGHT JENKINS, JOSHUA KNAPP, JONOTHAN LOGAN, MARIELLE LOVECCHIO, RYAN MCGEE, ZACHARY C. MILLER, CHRIS G. MURRAY, JAMES NOONAN, CHRISTINE PARDEW, DANIEL M. PARROTT, KATHERINE POE, LAURA RAYMOND , BRUCE RENWICK, ANAIS SENSIBA, GORDON WILLAM SENSIBA, ROBERT J. SIEGEL, MORA MI-OK STEPHENS, JOHN TRINKL, ANN TRUDELL, CHRISTY ANN TURNER, FRANTZ WALKER, JAMES WILLIAMSON, JAMES WILSON, TERAN WILSON, and RAISSA WU filed Notices of Claim with the Comptroller of the City of New York within 90 days of the events complained of herein. More than 30 days have elapsed since the filing of the Notices of Claim, and adjustment or payment thereof has been neglected or refused.

## Parties

13.     Plaintiffs were unlawfully arrested on August 31, 2004 and were therafter unlawfully detained for approximately 14 to 50 hours. Plaintiffs were citizens or residents of the United states or were otherwise lawfully in the Unites States at the time of the events complained of herein.

14.     Defendant THE CITY OF NEW YORK ( the "City") is a municipal corporation within the State of New York.

15.     Defendants MICHAL BLOOMBERG, RAYMOND KELLY, JOHN COLGAN, TERENCE MONAHAN, THOMAS GALATI, STEPHEN HAMMERMAN THOMAS DOEPFNER, RUBY MARIN- JORDAN, KERRY SWEET, DAVID COHEN and JOHN DOES were at all times relevant herein, duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a muncipal agency of defendant THE CITY OF NEW YORK. The defendants were at all relevant times acting under color of state law in the course and scope of their duties and functions as officers, agents, servants and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

## FACTS

16.     The Republican National Convention was held in New York City from August 30, 2004 to September 2, 2004.

17.     THE CITY OF NEW YORK began planning for the Convention more than a year

in advance. On information and belief, the City planned to make mass arrests during the Convention without determinations of individualized probable cause, and then to hold those arrested for prolonged periods of time to prevent them from participating in other protest activity.

18.     There were approximately 1,800 Convention- related arrests, many of them mass arrests of people lawfully on public sidewalks or streets. In many instances, the police effected those arrests by deploying long orange mesh nets to enclose large numbers of law-abiding demonstrators and innocent bystanders alike.

### The Arrests at the World Trade Center Site

_____19.____In preparation for the RNC, defendant COHEN, who was the Deputy Commissioner for Intelligence for NYPD, directed a surveillance campaign of individuals and groups. The intelligence, and the interpretation of that intelligence, which was provided to defendants KELLY and others in the NYPD, grossly misinformed NYPD planners concerning what could be expected to occur during the RNC, and encouraged and created a climate of hostility toward protesters. COHEN improperly conflated protesters' planned activities with civil disobedience, violence, violent anarchism, and terrorism.

_____20.____On Tuesday, August 30, 2004, the War Resisters League and the School of the Americas Watch organized a demonstration against the policies of the Bush administration. The demonstration was supposed to begin at the World Trade Center site and proceed to near Madison Square Garden.

_____21.____At about 3:00 p.m., people began gathering near the World Trade Center site on Church Street, near the intersection of Fulton Street. Plaintiff HEDEMANN, an organizer with the War Resisters league, negotiated with the police department, including defendant GALATI, to allow the march.

_____22.___Defendants and those under their command believed that it was the marchers' intention to proceed to the vicinity of Madison Square Garden.

23.    At approximately 4:00 p.m., the march began. There were approximately 800 to 1,000 people assembled at this time. Those at the front of the march, observing the traffic signals and in cooperation with the police, crossed Church Street and proceeded eastward up Fulton Street on the sidewalk. The march was orderly and calm. The marchers did not intend to, and they did not, block or obstruct the sidewalk. Almost immediately after the marchers crossed Church Street, and before they had gone even a full block, police halted the march.

24.    Without any warning, police officers surrounded over 200 people with orange mesh nets, and arrested them all, even though they had remained on the public sidewalk, were not blocking the sidewalk, and complied with police instructions.

25.    Those arrested were never told to dispense, were given no opportunity to disperse, and were never told that their conduct might be considered illegal, or advised that their presence or conduct would subject them to arrest.

26.    The persons arrested included people who were participating in the demonstration, others who were there merely by chance, some who were observers, and some who were taking photographs and video footage as representatives of the media.

27.    Upon information and belief, arresting officers had no knowledge of the conduct of any individual plaintiff that served as the basis for that plaintiff's arrest.

28.    Upon information and belief, most arresting officers did not hear any order that the marchers disperse and did not observe any marchers refuse to disperse.

29.    Most plaintiffs were charged with violation of Administrative Code section 10.110, Parading Without a Permit, notwithstanding that no permit is required for walking on the sidewalk

and that the plaintiffs were specially authorized by defendants to walk on the sidewalk.

30.     Most plaintiffs were also charged with disorderly conduct under New York Penal Law section 240.20 (the "Disorderly Conduct Statute"), subdivision 5 and 6.

31.     As soon as many of the marchers become aware that they were being placed under arrest, they sought an opportunity to leave the area, but were prevented by defendants and officers under their command form doing so.

32.     Many plaintiffs were placed in exceedingly tight handcuffs and, although they requested that they be loosened, some police officers refused to do so. Many plaintiffs remained in handcuffs for excessive periods of time.

33.     Upon information and belief, officers who placed the plaintiffs in handcuffs were given no training in the proper method for doing so, nor did they have available proper tools for removal of the handcuffs.

34.     Upon information belief, defendants MONAHAN and GALATI ordered this mass arrest in accordance with the mass arrest tactics developed and adopted by policymaking officials of the New York City Police department, including defendants BLOOMBERG, KELLY, and THE CITY OF NEW YORK.

## The Detentions at Pier 57

35.     The over 200 people arrested on Fulton Street sidewalk were transported to a facility known as Pier 57. Some of the vehicles were overheated, and some plaintiffs were verbally harassed and subject to other forms of pain and suffering. Pier 57, located on the Hudson River at 11th Avenue and 15th Street in Manhattan, was formerly a Metropolitan Transit Authority bus depot.

36.     According to published reports, three environmental inspections of Pier 57 in 2001

and early 2004 uncovered safety hazards, including easily disturbed asbestos particles, lack of

adequate fire protection systems, and floors covered with black oily soot. Those conditions had

not been corrected by the time of plaintiffs' detention at Pier 57.

37.    Upon arrival at Pier 57, plaintiffs were searched, had their property taken, and were

placed in one of the holding cells.

38.    Upon information and belief, arresting officers met at Pier 57 with lawyers

employed by and under the supervision of the Legal Bureau of the NYPD, who assisted the

arresting officers in filling out an On- Line Booking Sheet ( "OLBS") for each person arrested.

39.    On information and belief, the lawyers told the arresting officers to create false

accounts of the plaintiffs' arrests.

40.    On information and belief, defendants STEPHEN HAMMERMAN, THOMAS

DOEPFNER, KERRY SWEET, and RUBY MARIN- JORDAN were responsible for the actions

of the lawyers alleged in paragraphs 38 and 39, above, and knew , or should have known of those

actions.

41.    There were generally not enough benches for the number of arrestees in each cell.

As a result, many plaintiffs were unable to sit or sleep for long periods of time. Many plaintiffs

who sat or lay on the floor became filthy, and some got rashes or blisters from the substance on

the floor. The air quality was also poor, and many arrestees developed coughs or had difficulty

breathing. Some plaintiffs were denied medical care and reasonable access to toilets and facilities

for cleaning themselves. At night, the facility became cold, and the detainees, who were dressed

for a hot summer day in New York, were not provided with any blankets, nor was there any heat.

The arrestees were offered food at sporadic times while at Pier 57, although some went many

hours before receiving anything to eat.

42. Upon information and belief, there was no fingerprinting equipment at Pier 57, and the only processing that took place there was an inventory of personal belongings. Upon information and belief, the criminal courts were available to process those being help at Pier 57, and the State of New York was processing fingerprints in a timely manner. Nonetheless, the NYPD, without justification, detained people at Pier 57 for lengthy periods of time without making any meaningful efforts to process them so they could be released. As a result of this, many people, including the plaintiffs, remained in police custody for unnecessarily lengthy periods of time.

43. From Pier57, the plaintiffs were transferred to Central Booking at 100 Centre Street for processing. Some of the vehicles were overheated, and some plaintiffs were verbally harassed and subjected to other forms of pain and suffering. At Central Booking the detainees were photographed and fingerprinted, despite the fact that under New York law, fingerprinting of persons charged with violations is not authorized. The detainees were held for additional time at Central Booking before being arraigned in front of a judge or given a Desk Appearances Ticket and released from Central Booking. The duration of detention for the plaintiffs ranged from approximately 14 to 50 hours. Upon information and belief, those arrested on Fulton Street were charged with only violations such as disorderly conduct or parading without a permit.

44. None of the plaintiffs received summonses and only a few of them received DATs.

45. On October 6, 2004, the Manhattan District Attorney's office announced that it would dismiss all of the 227 prosecutions arising out of the August 31, 2004 arrest on Fulton Street.

46. Upon information and belief, the plaintiffs' arrests, the processing of those arrests, and the conditions of their detention, as described above, including (a) the arrest of persons

lawfully participating in, observing, or walking or standing in the vicinity of demonstrations,

protests or other forms of public expressions during the RNC; (b) the arresting of such persons

without appropriate warning and without individual probable cause; ( c) the denial of summonses

and DATs to such persons; (d) the requirement that such persons be fingerprinted prior to release;

(d) the submission to the District Attorneys and the Criminal Court of charges that were based on

knowingly false statements by arresting officers; (e) the unreasonably long detention of such

persons arrested on minor charges; (f) the detention of such persons under cruel and inhumane

conditions at a facility which was not suitable for the detention of arrestees; (g) the infliction of

pain and suffering upon such persons, including by the use of excessive force, keeping arrestees

in handcuffs for extended periods of time, applying extremely tight handcuffs, denying toilet and

personal hygiene facilities and supplies, denying adequate facilities to sit or sleep, confining and

transporting in over-heated vehicles, exposure to irritants, denial of adequate medical care, verbal

harassment, and other means of inflicting pain and discomfort; (h) the enforcement of a facially

unconstitutional statute, New York City Administrative Code section 10.110, Parading Without a

Permit;(i) the unconstitutional application of a statue, New York City Administrative Code

section 10.110, Parading Without a Permit, to peaceful protest on a sidewalk; (j) the enforcement

of the facially unconstitutional Disorderly Conduct Statute, subsection 5; and (h) the

unconstitutional application of the Disorderly Conduct Statute, were taken under color of law and

were the result of policies and practices developed, authorized, or approved by defendants

BLOOMBERG, KELLY, COLGAN, HAMMERMAN, DOEPFNER, SWEET, MARIN-

JORDAN, COHEN, and GALATI and THE CITY OF NEW YORK, or were the result of the

failure of those defendants to properly train and supervise police officers of the NYPD, and were

undertaken for the deliberate purpose of depriving the plaintiffs of their rights, and causing, or

with deliberate indifference to, the plaintiffs' physical and emotional suffering, and were the proximate cause of the deprivation of plaintiffs' constitutional rights.

## JURY DEMAND

47.     Plaintiffs demand a jury on each and every one of their claim.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE UNITES STATES AND NEW YORK CONSTITUTIONS ARISING FROM PLAINTIFFS' ARREST

48.     The arrests of the Plaintiffs violated their rights under the First, Fourth, Fifth and Fourteenth Amendments to the Unites States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

49.     As a result of the foregoing, Plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## SECOND CAUSE OF ACTION

### VIOLATION OF UNITED STATES AND NEW YORK CONSTITUTIONS ARISING FROM PLAINTIFFS' DETENTION

50.     The detention of plaintiffs violated their rights under the First, Fourth, Fifth, and Fourteenth Amendments to the Unites States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

51.     As a result of the forgoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

## THIRD CAUSE OF ACTION

### DISORDERLY CONDUCT STATUTE, SUBSECTION 5

Subsection 5 of the Disorderly Conduct Statute, on its face, violates the First Amendment and Due Process Clause of the Fourteenth Amendment in that it does not require that the police either(a) give a lawful order to disperse, and an opportunity to comply, before arresting persons gathered on a public sidewalk, or (b) have probable cause to believe that the persons arrested intended to substantially obstruct pedestrian traffic.

## FOURTH CAUSE OF ACTION

### PARADING WITHOUT A PERMIT

New York City Administrative Code section 10.110, Parading Without a Permit, insofar as it permits defendants to require a permit for persons to walk on a public sidewalk for the purpose of peaceful protest, violates the First Amendment to the United States Constitution and Article I, Section 8 and Article I, Section 12 of the New York State Constitution.

## FIFTH CAUSE OF ACTION:

### FALSE ARREST AND FALSE IMPRISONMENT

52.    The false arrest and imprisonment of plaintiffs without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so, were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law right as guaranteed by the laws and Constitution of the State of New York.

53.    As a result of the foregoing, plaintiffs were deprived of their liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, loss of income, costs and expenses, and were otherwise damaged and injured.

**WHEREFORE,** plaintiffs request the following relief jointly and severally against all of

the defendants;

    (a) Compensatory damages to all plaintiffs;

    (b) Punitive damage to all plaintiffs;

    ( c) Injunctive relief,

> 1. Requiring that defendants expunge all plaintiffs' arrest records, destroy their fingerprints records, remove from all records and databases maintained by defendants any reference to plaintiffs' arrest, and request that all law enforcement agencies that have received information concerning plaintiffs' arrest destroy such information.

> 2. Prohibiting defendants from enforcing the Disorderly Conduct Statute, subsection 5, against persons gathering on a public sidewalk without either giving a lawful dispersal order or having probable cause to believe that such persons intend to substantially obstruct pedestrian traffic.

> 3. Prohibiting defendants from Requiring a permit pursuant to New York City Administrative Code section 10.110, Parading without a Permit, for persons who seek to walk on a public sidewalk for the purpose of peaceful protest.

    (d) Pre- and post- judgement costs, interest and attorneys' fees;

    (e) Such other and further relief as this Court may deem just and proper.

Respectfully submitted

NORMAN FREDERICK BEST (NB 1968)
575 Madison Avenue, 10th Floor
New York, New York 10022
(212) 671-0122

ALAN LEVINE (AL 5297)
    99 Hudson Street, 14th Floor
    New York, New York 10013
    (212) 739-7506

MICHAEL L. SPIEGEL (MS 0856)
    111 Broadway, Suite 1305
    New York, New York 10006
    (212) 587-8558

MARTIN R. STOLAR (MS 1576)
    351 Broadway
    New York, New York 10013
    (212) 219-1919

Counsel for Plaintiffs

By: _____
    Michael L. Spiegel (MS 0856)

Dated:      August 30, 2007
          New York, New York

# EXHIBIT

# K

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

JEFFREY PHILLIPS, RAFAEL PORTO, JOEL )
MILLER, and MILES SWANSON )
)
Plaintiffs, )
)
-against- )                        **FIRST AMENDED COMPLAINT**
)
THE CITY OF NEW YORK; MICHAEL )
BLOOMBERG, Mayor of the City of New York; )      **05 Civ. 7624 (RJS)(JCF)**
RAYMOND KELLY, New York City Police )
Commissioner; STEPHEN HAMMERMAN, )           ) **ECF CASE**
Former Deputy Commissioner for Legal Matters, )
New York City Police Department; DAVID )        **JURY TRIAL DEMANDED**
COHEN, Deputy Commissioner for Intelligence, )
New York City Police Department; THOMAS )
DOEPFNER, Assistant Deputy Commissioner for )
Legal Matters, New York City Police Department; )
NYPD LIEUTENANT DANIEL ALBANO; NYPD )
DEPUTY INSPECTOR KERRY SWEET, NYPD )
Legal Bureau Executive Officer; NYPD Legal )
Bureau Senior Counsel RUBY MARIN-JORDAN )
NYPD LEGAL BUREAU SUPERVISOR(S) AT )
PIER 57; JOSEPH ESPOSITO, Chief of the New )
York Police Department; THOMAS GRAHAM, )
Commander, Disorder Control Unit, New York City)
Police Department; JACK MCMANUS, Assistant )
Chief, New York City Police Department; BRUCE )
SMOLKA, former Commander, Patrol Borough )
Manhattan South, New York City Police )
Department; TERENCE MONAHAN, Assistant )
Chief of the Bronx Borough Command; JOHN J. )
COLGAN, Assistant Chief, New York City Police )
Department; JAMES P. O'NEILL, Deputy Chief, )
New York City Police Department; NYPD )
CAPTAIN ROBERT BONIFATI; NYPD )
LIEUTENANT WILLIAM T. COOKE; POLICE )
OFFICER MATTHEW DIVIRGILIO, Shield No. )
31911; POLICE OFFICER JASON ANGEVINE, )
Shield No. 31582; POLICE OFFICER MARC )
STASI; JOHN DOES; RICHARD ROES; )

1

HUDSON RIVER PARK TRUST,                    )
                                           )
                    Defendants.            )
-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which the plaintiffs JEFFREY PHILLIPS, RAFAEL

PORTO, JOEL MILLER, and MILES SWANSON seek relief for the defendants' violation of

their rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, by the United

States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and by

the laws and Constitution of the State of New York. The plaintiffs seek damages, both

compensatory and punitive, affirmative and equitable relief, an award of costs and attorneys'

fees, and such other and further relief as this court deems equitable and just.

## JURISDICTION

2.      This action is brought pursuant to the Constitution of the United States, including

its First, Fourth, Fifth, Sixth and Fourteenth Amendments, and pursuant to 42 U.S.C. §1983.

Jurisdiction is conferred upon this court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and

1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiffs'

constitutional and civil rights.

3.      The plaintiffs further invoke this court's supplemental jurisdiction, pursuant to 28

U.S.C. §1367, over any and all state law claims and as against all parties that are so related to

claims in this action within the original jurisdiction of this court that they form part of the same

case or controversy.

## JURY TRIAL DEMANDED

4.      Plaintiffs demand a trial by jury on each and every one of their claims as pleaded

2

herein.

## **VENUE**

5.      Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## **NOTICE OF CLAIM**

6.      Plaintiffs JEFFREY PHILLIPS and MILES SWANSON filed Notices of Claim for false arrest and related torts with the Comptroller of the City of New York on November 24, 2004, within 90 days of the incidents complained of herein. MILES SWANSON additionally filed a Notice of Claim for malicious prosecution on January 24, 2005, within 90 days of the dismissal of his criminal charges. More than 30 days have elapsed since the filing of these Notices of Claim, and adjustment or payment thereof has been neglected or refused.

7.      Plaintiffs RAFAEL PORTO's and JOEL MILLER's applications to file late Notices of Claim were granted by New York State Supreme Court Justice Alice Schlesinger (New York County) on August 17, 2005 (Index No. 05/110624).

## **PARTIES**

8.      Plaintiff JEFFREY PHILLIPS is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

9.      Plaintiff RAFAEL PORTO is a citizen of Uraguay, and at all times relevant herein resided in the state of Pennsylvania.

10.     Plaintiff JOEL MILLER is a citizen of the United States, and at all times relevant herein resided in the state of Pennsylvania.

11.     Plaintiff MILES SWANSON is a citizen of the United States, and at all times

3

relevant herein resided in Washington, D.C.

12.     Defendant THE CITY OF NEW YORK ("The City") is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department ("NYPD").

13.     Defendant MICHAEL BLOOMBERG is and was, at all times relevant herein, the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department and is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued in both his individual and official capacities.

14.     Defendant RAYMOND KELLY is and was at all times relevant herein, the Police Commissioner for the City of New York, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

15.     STEPHEN HAMMERMAN, is and was at all times relevant herein, the Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

4

16.    DAVID COHEN, is and was at all times relevant herein, the Deputy Commissioner for Intelligence for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

17.    THOMAS DOEPFNER, is and was at all times relevant herein, Assistant Deputy Commissioner for Legal Matters for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

18.    NYPD LIEUTENANT DANIEL ALBANO, is and was at all times relevant herein a Lieutenant in the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

19.    NYPD DEPUTY INSPECTOR KERRY SWEET, is and was at all times relevant herein a Deputy Inspector in and the Executive Officer of the Legal Bureau for the New York City Police Department, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He is sued individually and in his official capacity.

20.    RUBY MARIN-JORDAN is and was at all times relevant herein a Senior Counsel within the Legal Bureau for the New York City Police Department, and she is responsible, in whole and/or in part, for the creation, implementation, promulgation and

5

enforcement of the policies, practices and /or customs complained of herein. She is sued individually and in her official capacity.

21    NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 are and were at all times relevant herein members of the Legal Bureau for the New York City Police Department, and are responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. They are sued individually and in his official capacity.

22.    Defendant JOSEPH ESPOSITO is and was at all times the Chief of Department of the NYPD, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and /or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

23.    Defendant THOMAS GRAHAM is the Commanding Officer of the Disorder Control Unit of the NYPD and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

24.    Defendant JACK MCMANUS, is an Assistant Chief in the New York City Police Department and was the NYPD's principal liaison with the Republican Party and for general oversight of the NYPD operations during the Republican National Convention (RNC) period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

25.    Defendant BRUCE SMOLKA is a retired Assistant Chief of the NYPD and the former

6

Chief of Patrol Borough Manhattan South and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

26.     Defendant TERENCE MONAHAN is an Assistant Chief in the NYPD and the Chief of the Bronx Borough Command who during the RNC period was responsible for the NYPD's Mobile Field Forces, which made the great majority of the unlawful arrests during the RNC period, and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He was also a street commander who commanded / oversaw the making of unconstitutional and illegal mass arrests during the RNC period. He is sued individually and in his official capacity.

27.     Defendant JOHN J. COLGAN, is an Assistant Chief in the NYPD and was the senior official overseeing the NYPD's operations at Pier 57 and he is responsible, in whole and/or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein. He is sued individually and in his official capacity.

28.     Defendants O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department, a municipal agency of defendant THE CITY OF NEW YORK. Said individual defendants are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority

7

vested in them by THE CITY OF NEW YORK and the New York City Police Department, and
were otherwise performing and engaging in conduct incidental to the performance of their lawful
functions in the course of their duties. Defendants O'NEILL, BONIFATI, COOKE,
DIVIRGILIO, ANGEVINE, STASI and JOHN DOES are sued individually and in their official
capacity.

   29.    Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER,
ALBANO, SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA,
MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are and were
at all times relevant herein duly appointed and acting supervisory officers, servants, employees
and agents of THE CITY OF NEW YORK and/or the New York City Police Department,
responsible for the training, retention, supervision, discipline and control of police officers under
their command. Said individual defendants are and were at all times relevant herein acting under
color of state law in the course and scope of their duties and functions as supervisory officers,
agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and
on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK
and the New York City Police Department, and were otherwise performing and engaging in
conduct incidental to the performance of their lawful functions in the course of their duties.
Defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO,
SWEET, MARIN-JORDAN, ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN,
COLGAN, O'NEILL, BONIFATI, COOKE, and RICHARD ROES are sued individually and in
their official capacity.

   30.    Defendant HUDSON RIVER PARK TRUST (hereinafter "HRPT") is and was at

8

all times relevant herein a public benefit corporation, organized and existing pursuant to the laws

of the State of New York. Defendant HUDSON RIVER PARK TRUST assumes the risks

incidental to the maintenance and use of its structures and the employment of its employees as

said risk attaches to the public consumers of the services provided by the HUDSON RIVER

PARK TRUST and those who enter and remain within its structures. Officials of HUDSON

RIVER PARK TRUST contracted with the CITY OF NEW YORK and/or otherwise assisted

THE CITY OF NEW YORK with its use of Pier 57 during the period of the Republican National

Convention (RNC). Said officials are and were at all times relevant herein acting under color of

state law in the course and scope of their duties and functions as officials of defendant HUDSON

RIVER PARK TRUST, were acting for, and on behalf of, and with the power and authority

vested in them by HUDSON RIVER PARK TRUST and were otherwise performing and

engaging in conduct incidental to the performance of their lawful functions in the course of their

duties.

## STATEMENT OF FACTS

31.     Plaintiffs are all individuals who came to New York City in late August, 2004 to

peacefully and lawfully exercise their rights to free speech and assembly during the period of the

Republican National Convention ("RNC"), and to enjoy their time in New York City as out-of-

town visitors during their stay.

32.     Plaintiffs were all arrested during one of the many mass-arrests conducted by the

NYPD during the period of the RNC, arrests made by the NYPD without probable cause or

individualized suspicion of criminal activity.

33.     On August 29, 2004, plaintiffs PHILLIPS, PORTO, and MILLER had

9

participated in the large, peaceful, United for Peace and Justice march in Manhattan. After relaxing for a time in Bryant Park, they decided to walk to Times Square. They wanted to observe any further political expression that may have been occurring there and, if the spirit moved them, to further voice their political opinions.

34.    When they arrived at Broadway between 45th and 46th Streets the block was crowded. Many people and police officers were all around. As they made their way through the crowd along the sidewalk, they were asked by the police to step back underneath a scaffold that covered a significant portion of the sidewalk near 46th Street and Broadway. They complied with this request, and shortly thereafter the crowd underneath the scaffold was surrounded by the police and penned in underneath the scaffold.

35.    Plaintiff MILES SWANSON had spent the day of August 29th as a legal observer, attempting to facilitate and bear witness to the various demonstrators' exercise of their lawful rights to free speech and assembly. He went to Times Square to further serve as a legal observer, and was wearing a bright fluorescent green baseball cap at the time that identified him as a legal observer affiliated with the National Lawyers Guild.

36.    While MILES SWANSON was near 46th Street and Broadway some of the police officers in the area were using batons and horses to shove and herd the crowd. MILES SWANSON and others were ordered further back onto the sidewalk by police officers.

37.    Shortly thereafter the crowd that was underneath the scaffold was surrounded by the police and penned in underneath the scaffold, including MILES SWANSON.

38.    When plaintiffs and the rest of the crowd were penned in underneath the scaffolding the police brought forth orange netting that they used to surround the crowd.

10

39.    The crowd was not free to leave this location. On information and belief, other than a small number of individuals, most of whom were employed in the media, who were selected and released from the penned-in area by the police officers, the rest of the people who were surrounded by the orange netting were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

40.    The arrest decision was made by Defendant O'NEILL, without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct. This decision to engage in the mass arrests at 46th Street and Broadway was communicated to lower-ranking NYPD officers, who effected those orders.

41.    Defendant BONIFATI made the decision as to how and when to seal the arrestees under the scaffolding so that they could all be arrested pursuant to Defendant O'NEILL's directive. Defendant BONIFATI did so without justification or probable cause, and without individualized knowledge that any of the arrestees had engaged in any illegal conduct. This decision as to how and when to seal the arrestees under the scaffolding so that they could all be arrested pursuant to Defendant O'NEILL's directive was communicated to lower-ranking NYPD officers, who effected those orders.

42.    Defendants COOKE and RICHARD ROES were among the NYPD Commanding Officers who also exercised command responsibility at 46th Street and Broadway, and participated both directly and in their capacity as supervisors in making the wrongful mass arrests, including by assisting with the handcuffing process and the assignment of arrestees to their assigned arresting officers. They were remiss in their supervisory duties, including failing to ensure that assigned arresting officers under their command had individualized knowledge

11

that any of their assigned arrestees had engaged in any illegal conduct, and failing to ensure that their subordinate officers did not fill out false paperwork and swear out false affidavits attesting to facts of which they were not truly aware.

43.    Plaintiffs were handcuffed behind their backs and placed into vehicles by NYPD officers for transport to Pier 57.

44.    Defendant DIVIRGILIO was assigned as the arresting officer for plaintiff JEFFREY PHILLIPS and, on information and belief, for RAFAEL PORTO.

45.    Defendant ANGEVINE was assigned as the arresting officer for plaintiff JOEL MILLER.

46.    Defendant STASI, on information and belief, was assigned as the arresting officer for plaintiff MILES SWANSON.


47.    Plaintiffs were taken to Pier 57, a former bus depot that was reconfigured for use as a detention facility during the period of the RNC by defendant CITY OF NEW YORK.

48    Pier 57 is owned by and/or under the control of defendant HRPT.

49.    Prior to the RNC the CITY OF NEW YORK contracted with HRPT for the use of Pier 57 as a detention facility.

50.    On information and belief, all of the arrestees from 46th and Broadway, and the vast majority of the almost two thousand people arrested during the course of the period of the RNC, were confined for some period of time at Pier 57.

51.    The conditions at Pier 57 were atrocious. The detainees were kept in chain-link cages topped with barbed wire that lacked adequate seating. The floor of Pier 57 was caked with

12

a dark grimy substance that spread to the clothing and bodies of those detained therein. There were numerous signs warning of hazardous materials that were posted at multiple locations throughout the pier. On information and belief, the detainees were exposed during their time at Pier 57 to toxic, irritating and/or hazardous chemicals which the City and HRPT knew, or should have known, were present there. During these periods of confinement the detainees were unlawfully denied adequate food, water, sanitation, medical attention and/or access to counsel.

52.    Plaintiffs were processed at Pier 57, and their arresting officers were instructed by employees of THE CITY OF NEW YORK under the supervision of HAMMERMAN, DOEPFNER, SWEET, ALBANO MARIN-JORDAN, and NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57 to create false accounts of plaintiffs' arrests. On information and belief, these Legal Bureau personnel also participated in the making of unconstitutional and illegal arrests at numerous mass arrest locations during the RNC.

53.    Defendant HAMMERMAN was appointed by Defendant Kelly as Deputy Commissioner of Legal Matters without having knowledge at all of the rights of demonstrators or of individuals' rights under the First Amendment more generally, and no knowledge of the elements of the charges that are most commonly lodged against arrestees in demonstration-related circumstances. In addition to delegating his authority to Defendant DOEPFNER during the RNC period, which resulted in the construction of the NYPD Legal Bureau's unconstitutional and illegal policies, practices, customs, and usages during the RNC period, Defendant HAMMERMAN also personally set a tone of lawlessness and contempt for individual rights within the NYPD during the RNC, including by personally attempting to frame an individual named Dennis Kyne for crimes which he did not commit.

13

54.     The detainees at Pier 57, including plaintiffs, were further subjected to unreasonable delay in being processed and moved through the system. The City insisted on fingerprinting all RNC detainees, the vast number of whom were arrested and charged based only on the alleged commission of violations that did not rise to the level of crimes under New York State law, and who therefore under New York State law did not have to be fingerprinted to be processed and released with a date to return for court. Despite the City's insistence on fingerprinting all RNC arrestees, the detention facility at Pier 57 not equipped with any fingerprinting machines. On information and belief, once the City eventually fingerprinted these RNC arrestees their fingerprints and other personal information were sent to State and Federal authorities and not destroyed, thus violating the privacy rights and interests of the arrestees and creating the potential for unlawful surveillance activity by law enforcement authorities, for the unlawful chilling of their exercise of free speech and association, and for disruptions to their lives. Additionally, unnecessary and dilatory additional processing steps were taken at Pier 57 that delayed the detainees' movement through the system, including overly exacting property itemization procedures and the screening of each arrestee's paperwork by the NYPD's Legal Division to determine and finalize what suggested charges should be forwarded to the District Attorney's office for each arrestee, and to create the arrest narratives on the arresting officers' paperwork. Further unreasonable and unnecessary delays were also suffered by RNC detainees upon their subsequent transfer to and detention at the Central Booking Facility at 100 Centre Street. All arrestees during the RNC were thereby held in custody of the CITY OF NEW YORK for periods of time longer than were reasonable or necessary.

55.     After their detention at Pier 57, further callous and unreasonable treatment and

14

conditions of confinement were endured by plaintiffs during their transfer to and confinement at the Central Booking Facility at 100 Centre Street.

56.     On information and belief, during the periods of their confinement the vast majority of RNC arrestees were subjected to unreasonably tight and painful wrist restraints/handcuffs.

57.     During their time in custody plaintiffs were subjected to unreasonably tight and painful wrist restraints/handcuffs.

58.     Defendant DIVIRGILIO told plaintiff JEFFREY PHIILLIPS, in sum and substance, that he knew that the charges against the arrestees were "bullshit" and that the arrestees had not committed any violations of the law. Defendant DIVIRGILIO also referred to Pier 57 as "Guantanamo." When plaintiff JEFFREY PHILLIPS was arrested at 46th Street and Broadway he asked a higher-ranking NYPD officer present there why he was being arrested. In response the officer indicated in the direction of a young man wearing a bright green Legal Observer's hat, and snidely told JEFFREY PHILLIPS, in sum and substance, that he should ask his legal advisor.

59.     Plaintiff JEFFREY PHILLIPS was released after approximately 21 hours in custody. He was charged with two counts of disorderly conduct which have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

60.     Plaintiff RAFAEL PORTO was released after approximately 23 hours in custody. On information and belief, he was charged with two counts of disorderly conduct. All charges against RAFAEL PORTO have been dismissed in their entirety of by way of an adjournment in contemplation of dismissal.

15

61.    Plaintiff JOEL MILLER was released after approximately 22 hours in custody.
He was charged with two counts of disorderly conduct which have been dismissed in their
entirety of by way of an adjournment in contemplation of dismissal.

62.    Plaintiff MILES SWANSON was released after approximately 25 hours in
custody. On information and belief, he was charged with two counts of disorderly conduct. All
charges against MILES SWANSON have been dismissed in their entirety.

63.    Prior to, during, and after the RNC officials of the CITY OF NEW YORK
evinced through their statements and actions an attitude of contempt toward those who
demonstrated during the RNC, and toward those thought to be assisting or otherwise related to
them, including legal observers, anarchists, certain segments of the press, and the National
Lawyers Guild. Officials of the CITY OF NEW YORK attempted to create a climate of fear
relative to the activities of demonstrators.

64.    Defendant COHEN prior to the RNC caused the NYPD to be engaged in
widespread surveillance of individuals and groups expected to be demonstrating during the RNC
period, and fostered and created a climate of hostility toward demonstrators, improperly
conflating them with civil disobedience and/or violence and/or violent anarchism and/or
terrorism. The intelligence obtained through Defendant COHEN's RNC intelligence program
formed the backdrop and basis for the unconstitutional and illegal treatment of RNC arrestees,
including the decision to engage in wrongful mass arrests, to fingerprint all arrestees, to not issue
summonses to any RNC arrestees, and to hold RNC arrestees in NYPD custody for an
improperly long period of time. The intelligence, and the interpretation of intelligence, which
was provided by COHEN to THE CITY OF NEW YORK, to NYPD officials, and to others as a

16

result of that surveillance and intelligence-gathering grossly misrepresented what could be expected to occur during the RNC, and encouraged and created this climate of hostility toward demonstrators and these unconstitutional and illegal policies resulting therefrom.

65.    This tone of hostility to demonstrators, and the resultant policies, customs, practices and usages to punish and discourage dissent were further set by statements made by other high level City Officials, including the Mayor and Police Commissioner, in the period leading up to and during the RNC. These statements portrayed those who chose to engage in political protest in the most negative light. This criminalization and/or demonization of people engaged in political protest was clearly communicated to NYPD police officers and supervisors through the public statements by NYPD officials, including Police Commissioner Kelly, who made remarks about the threat posed to New York City by "hard-core" and "dangerous" protestors. This sentiment was reiterated, summarized and ratified in the public statements of defendant BLOOMBERG in which he identified the plaintiffs and those similarly situated as "terrorists" and "guilty" criminals.

66.    Defendants BLOOMBERG and KELLY further displayed their animosity to demonstrators, and their contempt for the rights of demonstrators, during the RNC period by discriminatorily and under false pretenses denying the issuance of a permit for use of Central Park's Great Lawn by demonstrators for a rally at the end of the largest planned demonstration of the RNC period on August 29, 2004.

67.    The NYPD engaged in unreasonable mass arrests at multiple locations throughout New York City during the period of the RNC, where everyone or almost everyone present at a particular location was taken into police custody if they were demonstrating or perceived by the NYPD to have been demonstrating. Lawful demonstrators, observers, or passers-by were swept

17

up in these mass arrests and taken to Pier 57. These arrests were conducted unreasonably, without respect for the rights of free expression and association, and without probable cause or individualized suspicion of wrongdoing.

68.     The NYPD enforced a facially unconstitutional, overbroad, and vague parading ordinance against those demonstrating or perceived to have been demonstrating, and applied the parading ordinance, as well as other laws including the statute prohibiting disorderly conduct, in a discriminatory and unequal fashion.

69.     The CITY OF NEW YORK engaged in false arrests and used the conditions and length of pre-arraignment detention for a punitive purpose, and in order to interfere with, retaliate for, and chill the exercise of free speech and association. The CITY OF NEW YORK engaged in these false arrests and dilatory processing of the arrestees in part to prevent the arrestees from exercising their rights to free speech and expression.

## FIRST CLAIM

## DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

70.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

71.     By their conduct and actions in harassing, falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering, violating and retaliating for the exercise of rights to free speech and assembly of, inflicting emotional distress upon, failing to intercede on behalf of, and fabricating an account concerning the arrests of plaintiffs, and by subjecting plaintiffs to improperly prolonged, harsh, and hazardous conditions of confinement without access to lawyers, by deliberate indifference to medical needs, and by violating the

18

arrestees' Fourteenth Amendment rights to equal protection and substantive and procedural due process, defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI and JOHN DOES, acting under color of law and without lawful justification, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, Sixth and Fourteenth amendments.

72.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SECOND CLAIM

# SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

73.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

74.     By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory officers BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO,

19

GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE
and RICHARD ROES caused damage and injury in violation of plaintiffs' rights guaranteed
under 42 U.S.C. §1983, and the United States Constitution, including its First, Fourth, Fifth,
Sixth and Fourteenth amendments.

75.     As a result of the foregoing, plaintiffs were deprived of their liberty and property,
suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,
costs and expenses, and were otherwise damaged and injured.

## THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

76.     The plaintiffs incorporate by reference the allegations set forth in all preceding
paragraphs as if fully set forth herein.

77.     At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants had policies,
practices, customs and usages which were a direct and proximate cause of the unconstitutional
conduct alleged herein.

78.     At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants, had policies,
practices, customs, and usages of failing to properly train, screen, supervise, or discipline
employees and police officers, and of failing to inform the individual defendants' supervisors of
their need to train, screen, supervise or discipline said defendants.  These policies, practices,
customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged
herein.

79.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of encouraging and/or tacitly sanctioning the violation of and/or retaliation for individuals' exercise of free expression and assembly. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of punishing and suppressing peaceful expression and association. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of using the mechanisms and conditions of arrest and pre-arraignment detention for punitive and deterrent purposes. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of maliciously prosecuting those arrested in connection with the RNC. The CITY OF NEW YORK during the period of the RNC had policies, practices, customs, and usages of preventive detention. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

80.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of keeping the traffic flow moving smoothly for the benefit of the Republican Party at all costs, including the use of mass arrests and preventive detention, and of ensuring that the Republican Delegates to the Republican National Convention were able to move among and between their hotels, Madison Square Garden, and other RNC venues without any risk of impediment. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

21

81.    At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants, had policies,
practices, customs, and usages of making false arrests at the slightest subjective perception of
uncooperativeness by civilians or that the police were not in, or may soon not be in, full control
of a situation, whether or not their perceived lack of control or a perceived lack of
cooperativeness in fact did not indicate the violation of any law. These policies, practices,
customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged
herein.

82.    At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants, had policies,
practices, customs, and usages of not issuing summonses to RNC arrestees, and of
not issuing Desk Appearance Tickets to RNC arrestees. These policies, practices, customs, and
usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83.    At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants, had policies,
practices, customs, and usages of fingerprinting of all RNC arrestees. These policies, practices,
customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged
herein.

84.    At all times material to this complaint, defendant THE CITY OF NEW YORK,
acting through its police department, and through the individual defendants, had policies,
practices, customs, and usages of making false statements concerning RNC arrestees and the
circumstances of their arrests in police documents, to Assistant District Attorneys, in sworn

22

Criminal Court charging instruments, and at criminal trials. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

85. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of inflicting pain and suffering upon persons, including, keeping arrestees in handcuffs / flexcuffs for extended periods of time, applying extremely tight handcuffs / flexcuffs, denying adequate facilities to sit or sleep, exposure to irritants, exposure to extremes of heat and cold, shuttling arrestees unnecessarily among and between numerous holding cages and cells, and other means of inflicting pain and discomfort. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

86. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in degrading verbal abuse utterly intolerable in a civilized society towards RNC arrestees, often while physical compulsion and/or force was being applied to RNC arrestees via tight handcuffs / flexcuffs or otherwise. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

87. At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of promoting those members of the NYPD who participated in the NYPD's unconstitutional and illegal policies during the RNC. These policies, practices,

23

customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

88.     At all times material to this complaint, defendant THE CITY OF NEW YORK, acting through its police department, and through the individual defendants, had policies, practices, customs, and usages of engaging in mass arrests without probable cause and/or individualized suspicion of wrongdoing, and of enforcing an unconstitutional, overbroad, and vague parading ordinance, and of discriminatorily and unequally applying the parading ordinance and other laws, including the statute prohibiting disorderly conduct. Examples of these unconstitutional, discriminatory and unequal policies, practices, customs, and usages are: (a) the enforcement of the unconstitutional parading statute, New York City Administrative Code section 10.110, Parading Without a Permit; (b) the application of the Parading Without a Permit statute to people walking on the sidewalk; (c) the application of the Disorderly Conduct statute, subsection 5, to people walking on the sidewalk; (d) enforcement of the Disorderly Conduct statute, Penal Law section 240.20(6) (failure to obey a lawful order to disperse) without cause to believe that an arrestee was congregated with others and/or without having issued any dispersal orders and/or failing to ensure that the dispersal orders were heard and/or or without giving a sufficient opportunity for people to disperse. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

89.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FOURTH CLAIM

24

## LIABILITY OF HUDSON RIVER PARK TRUST
## FOR CONSTITUTIONAL VIOLATIONS

90.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

91.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST had de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

92.    At all times material to this complaint, defendant HUDSON RIVER PARK TRUST, had de facto policies, practices, customs, and usages of deliberate indifference to the health and well being of those who they knew or should have known would be held in Pier 57.

93.    By their conduct and actions in contracting with the CITY OF NEW YORK and otherwise assisting the CITY OF NEW YORK concerning the use of Pier 57 during the period of the RNC, and thereby subjecting plaintiffs to hazardous conditions of confinement, officials of the HUDSON RIVER PARK TRUST, acting under color of law and without lawful justification, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of plaintiffs' constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth, Fifth, and Fourteenth amendment.

94.    These acts, policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

95.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

25

## FIFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY OF THE CITY OF NEW YORK AND HUDSON RIVER PARK TRUST FOR STATE LAW VIOLATIONS

96.     The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.     The conduct of defendants BLOOMBERG, KELLY, HAMMERMAN, COHEN, DOEPFNER, ALBANO, SWEET, MARIN-JORDAN, NYPD LEGAL BUREAU SUPERVISOR(S) AT PIER 57; ESPOSITO, GRAHAM, MCMANUS, SMOLKA, MONAHAN, COLGAN, O'NEILL, BONIFATI, COOKE, DIVIRGILIO, ANGEVINE, STASI, DOES and ROES alleged herein, occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as New York City police officers, and/or while they were acting as agents and employees of defendant THE CITY OF NEW YORK, and, as a result, defendant THE CITY OF NEW YORK is liable to the plaintiffs pursuant to the state common law doctrine of respondeat superior.

98.     The conduct of employees and officials of the HUDSON RIVER PARK TRUST, alleged herein, in contracting with and otherwise assisting the CITY OF NEW YORK concerning the improper and dangerous use of Pier 57, occurred in and during the course and scope of their duties and functions as employees and officials of the HUDSON RIVER PARK TRUST, and, as a result, defendant HUDSON RIVER PARK TRUST is liable to plaintiffs pursuant to the state common law doctrine of respondeat superior.

99.     As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

26

## SIXTH CLAIM

### ASSAULT AND BATTERY

100.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

101.    By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES did inflict assault and battery upon plaintiffs. The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

102.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SEVENTH CLAIM

### FALSE ARREST and FALSE IMPRISONMENT

103.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

104.    By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES caused to be falsely arrested or falsely arrested plaintiffs, without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

27

105.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## EIGHTH CLAIM

### MALICIOUS PROSECUTION

106.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

107.    By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES maliciously prosecuted plaintiff MILES SWANSON without any right or authority to do so.  The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff MILES SWANSON and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

108.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## NINTH CLAIM

### INTENTIONAL and NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

109.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

110.    By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES engaged in extreme and outrageous conduct, which intentionally and/or negligently caused severe emotional distress to plaintiffs.  The acts and conduct of the

28

defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

111.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## TENTH CLAIM

## ABUSE OF PROCESS

112.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

113.    By the conduct and actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES employed regularly issued process against plaintiffs compelling the performance or forbearance of prescribed acts. The purpose of activating the process was intent to harm plaintiffs without economic or social excuse or justification, and the defendants were seeking a collateral advantage or corresponding detriment to plaintiffs which was outside the legitimate ends of the process. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

114.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## ELEVENTH CLAIM

29

**VIOLATION OF AND RETALIATION FOR THE EXERCISE OF RIGHTS TO FREE SPEECH AND ASSEMBLY**

115. The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

116. By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES violated the free speech and assembly rights of plaintiffs and retaliated against plaintiffs for the exercise of their rights to free speech and assembly. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

117. As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

**TWELFTH CLAIM**

**VIOLATION OF RIGHT TO EQUAL PROTECTION OF LAW**

118. The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

119. By the actions described above, defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES violated the right of plaintiffs to equal protection of law. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

120.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

### THIRTEENTH CLAIM

### NEGLIGENCE

121.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

122.    The defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES, jointly

and severally, negligently caused injuries, emotional distress and damage to the plaintiffs. The

acts and conduct of the defendants were the direct and proximate cause of injury and damage to

the plaintiffs and violated their statutory and common law rights as guaranteed by the laws and

Constitution of the State of New York.

123.    As a result of the foregoing, plaintiffs were deprived of their liberty and property,

suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation,

costs and expenses, and were otherwise damaged and injured.

### FOURTEENTH CLAIM

### NEGLIGENT HIRING, SCREENING, RETENTION, SUPERVISION AND TRAINING

124.    The plaintiffs incorporate by reference the allegations set forth in all preceding

paragraphs as if fully set forth herein.

125.    Defendants THE CITY OF NEW YORK and HUDSON RIVER PARK TRUST

negligently hired, screened, retained, supervised and trained the employees and officials who

injured plaintiffs. The acts and conduct of these employees and officials were the direct and

31

proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

126.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## FIFTEENTH CLAIM

## FUTURE MEDICAL EXPENSES

127.    The plaintiffs incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

128.    During their detention at Pier 57, plaintiffs were exposed to hazardous materials. As a result of this exposure, plaintiffs reasonably anticipate consequential damages in the form of future expenses for medical monitoring and testing.

129.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

## SIXTEENTH CLAIM

## PRIMA FACIE TORT

130.    The plaintiffs incorporate by reference the allegations set forth in the paragraphs above, as if fully set forth herein.

131.    Defendants DIVIRGILIO, ANGEVINE, STASI, DOES and ROES, without excuse or justification, and intending to inflict harm upon plaintiffs by an act or series of acts that would otherwise be lawful, did inflict harm upon plaintiffs, to wit, the confinement and

32

processing of plaintiffs through the stages of pre-arraignment detention in a hazardous and dilatory fashion. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

132.    As a result of the foregoing, plaintiffs were deprived of their liberty and property, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and were otherwise damaged and injured.

WHEREFORE, the plaintiffs demand the following relief jointly and severally against all of the defendants:

        a. Compensatory damages;

        b. Punitive damages;

        c. The convening and empanelling of a jury to consider the merits of the claims

herein;

        d. Costs and interest and attorney's fees;

        e. Such other and further relief as this court may deem appropriate and equitable.

Dated:      New York, New York
           February 4, 2008

                                 /S/

                            JEFFREY A. ROTHMAN, Esq.
                            (JR-0398)
                            315 Broadway, Suite 200
                            New York, New York 10007
                            (212) 227-2980
                            Attorney for Plaintiffs