attention. He was transported to Pier 57 where he was herded into cold, overcrowded wire cages for many hours and where he had to sit or lie on the floors, which were contaminated and filthy, in order to rest or sleep. He was denied adequate toilet and sanitary facilities. He was also denied the right to contact his family or an attorney concerning his arrest.

200.    As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, STEKETEE has suffered physical injury, pain, and suffering, mental anguish, and emotional distress.

### Plaintiff William Steyert, Jr.

201.    Plaintiff WILLIAM STEYERT JR. is a disabled Vietnam veteran. He was arrested on August 31, 2004 on Fulton Street between Church Street and Broadway. At the time of his arrest, STEYERT was not violating any law or order from a police officer. His arrest was totally without any probable cause. He was held in custody for approximately 16 -17 hours.

202.    On the day of his arrest, STEYERT wished to engage in peaceful protest against the RNC. He attended a vigil at the site of the World Trade Center. After that vigil, he planned to walk north on Broadway where, when he arrived at the vicinity of the RNC, he intended to engage in further protest against the domestic, foreign and military policies of the Bush government. The group held its vigil at the site of the World Trade Center and then assembled on Fulton Street to march up Broadway which they had been explicitly told by defendant Inspector THOMAS GALATI they were permitted to do. Before the march had processed half a block, defendant Assistant Chief TERENCE MONAHAN suddenly screamed, in substance, "You are all under arrest." This arrest decision was made in conjunction with defendant Inspector GALATI. NYPD officers surrounded the group, including plaintiff STEYERT, as well as non-protesting bystanders, with plastic orange

netting and proceeded to handcuff everyone and transport them to Pier 57. At no time was the group or plaintiff STEYERT ever ordered to disperse and/or given an opportunity to do so. At the time that plaintiff was arrested by defendant P.O. JASON MARTINOFF, there was absolutely no cause, let alone probable cause, to arrest him. Notwithstanding, defendant MARTINOFF swore to a criminal complaint attesting he had personally observed STEYERT engage in illegal conduct, which STEYERT did not commit and which MARTINOFF did not witness. All charges against those arrested at this location, including plaintiff STEYERT, were subsequently dropped by the Manhattan District Attorney.

203. Following his arrest, STEYERT was subjected to excessively tight handcuffing, for many hours, causing numbness, pain, and extreme discomfort. He was transported to Pier 57 where he was herded into cold, overcrowded wire cages for many hours and where he was unable to sit or rest, due to the filthy and potentially toxic conditions of the floor. Given the filthy condition of the floor and walls, he was forced to have contact with and to breathe in potentially hazardous chemicals. In addition, he was also denied adequate toilet and sanitary facilities. Further, he was denied medication, notwithstanding several requests therefore.

204. As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, STEYERT has suffered physical injury, pain, and suffering, mental anguish, and emotional distress.

### Plaintiff Rebecca Stoneback

205. Plaintiff REBECCA STONEBACK is a glass artist and jewelry designer. She was arrested on August 31, 2004 at approximately 9:00 p.m., on 17th Street between Fifth Avenue and Broadway. At the time of her arrest, STONEBACK was not violating any law or order from a police

officer. Her arrest was totally without any probable cause. She was held for approximately 45-50 hours.

206. On August 31, 2004, STONEBACK had come into the City from her home in Asbury, New Jersey to lawfully and peacefully protest against the domestic, foreign and military policies of the Bush Administration. STONEBACK and a friend went to Union Square and joined with a group of other demonstrators who wanted to walk to the official "protest zone" that had been established in the vicinity of Madison Square Garden. They walked north on Broadway, at all times walking on the sidewalk. When they came to a barricade across Broadway, they asked an NYPD supervisor, one of the defendant ROEs herein, where they should go to get back to the protest zone. He advised them to head west on 17th Street, which they did, again at all times walking on the sidewalk. At 17th Street and Fifth Avenue STONEBACK and the others were again stopped by a barricade and police officers. Defendant Inspector THOMAS DIRUSSO told STONEBACK and others to wait while he made a call so that he could direct them further. When they looked back, they saw that there were barricades at the other end of 17th Street and that they were effectively trapped.

207. Shortly thereafter, STONEBACK was ordered to form a line in 17th Street and then to move to the south sidewalk on 17th Street and sit down, all of which she did. Whereupon, at the decision of defendant DIRUSSO and defendant Inspector WARD, she was arrested, handcuffed and placed into a City bus. Plaintiff STONEBACK was handcuffed by defendant MONA PHILLIPS, who was designated her arresting officer by defendant NYPD Supervisor ROMAN. PHILLIPS later swore to a criminal complaint which charged the plaintiff with parading without a permit and two counts of disorderly conduct, notwithstanding the complete absence of any cause, let alone probable

cause, to arrest her for these or any other criminal charges. In this complaint, signed under penalty of perjury, defendant PHILLIPS attested to personal knowledge of offences that PHILLIPS did not observe and that the plaintiff did not commit. STONEBACK agreed to accept an adjournment in contemplation of dismissal when she was finally brought before a judge for her arraignment.

208. Following her arrest, STONEBACK was subjected to excessively tight handcuffing, for many hours, causing numbness, pain, and extreme discomfort. She was transported to Pier 57 where she was herded into cold, overcrowded wire cages for many hours and where she had to sit or lie on the floor in order to rest or sleep. Because the floor and walls were contaminated and filthy, STONEBACK developed and continues to suffer from skin rashes and irritation. She was also denied adequate toilet and sanitary facilities.

209. While at Pier 57, STONEBACK was assaulted by one of the ROE/DOE defendants herein, an unidentified white male NYPD officer, functioning as a guard at the aforementioned location. The assault was unreasonable, excessive and unprovoked. It resulted in a bruise to the plaintiff's elbow.

210. As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, STONEBACK has suffered physical injury, pain, and suffering, mental anguish, and emotional distress.

### Plaintiff Christopher A. Thomas

211. Plaintiff CHRISTOPHER A. THOMAS is an art history professor at the University of Victoria in Victoria, British Columbia, Canada. He is a noted scholar of American Art History and is the author of the standard history book on the subject of the Lincoln Memorial entitled *The Lincoln Memorial and American Life*. He was arrested on August 31, 2004 at approximately 6:00

p.m. in front of the New York Public Library, at 42nd Street and Fifth Avenue. At the time of his arrest, THOMAS was not violating any law or lawful order from a police officer. His arrest was without probable cause. He was held in custody for approximately 15 to 16 hours.

212.   On August 31, 2004, THOMAS and his eighteen year old son were visiting New York City on vacation. Coming from the Empire State Building, and en route to the subway to Yankee Stadium, where they had tickets to a ball game, they walked past the New York Public Library at Fifth Avenue and 41st Street so that THOMAS's son could photograph the library. As THOMAS and his son approached the front steps to the Library around 6:00 p.m., they stopped to observe some activity between police officers and RNC demonstrators on the Library's mezzanine. Standing with other onlookers in disbelief and observing the police arrest demonstrators with what appeared to be unnecessary force, THOMAS was approached by an NYPD supervisor, on information and belief, defendant Captain RONALD MERCANDETTI, who advised him that he was blocking the street. THOMAS was not blocking the street and noted to the officer that the officer was "blocking the steps" to the Library. Defendant MERCANDETTI and another officer, who on information and belief was Sergeant Edward Murphy, grabbed THOMAS by both arms, jerked the bag of books he was carrying out of his hand, and informed him that he was under arrest.

213.   THOMAS asked why he was being arrested. Defendant MERCANDETTI responded, in substance, "You don't ask me why."

214.   THOMAS explained that he was a tourist from Canada and that his son was unfamiliar with New York City. THOMAS requested that he be permitted to speak with his son to insure his safety. This request was denied.

215.   Defendant P.O. KEVIN SCOTT was later assigned as THOMAS's arresting officer.

80

Defendant SCOTT swore, under penalty of perjury, in THOMAS's criminal complaint that he personally observed THOMAS engage in disorderly conduct, which THOMAS did not commit and which defendant SCOTT did not witness.

216. In the course of his arrest, THOMAS was subjected to excessively tight handcuffing, for many hours, causing numbness, pain, and extreme discomfort. He was transported to Pier 57 where he was herded into cold, overcrowded wire cages for many hours and where he was unable to sit or rest, due to the filthy and potentially toxic conditions of the floor. Given the filthy condition of the floor and walls, he was forced to have contact with and to breathe in potentially hazardous chemicals. He was also denied adequate toilet and sanitary facilities. His repeated requests for permission to call his son were denied by the guards.

217. As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, THOMAS has suffered physical injury, pain, and suffering, mental anguish, and emotional distress. Further, although his specialty is American art history, he reasonably fears that this arrest will make it more difficult to cross the U.S.-Canadian border and thereby engage in his profession.

### Plaintiff Danielle Walsh

218. Plaintiff DANIELLE WALSH, at the time of her arrest, was a student at Queensborough Community College and worked in a doctor's office. She was arrested on August 31, 2004, at approximately 7 p.m. on 16th Street between Union Square East and Irving Place. WALSH was not violating any law or order from a police officer. Her arrest was totally without any cause, let alone probable cause. She was held for approximately 48 hours.

219. On the evening of her arrest, at approximately 6 p.m., WALSH met two friends after

work in the Union Square area. After going to Virgin Records on 14th Street, WALSH and her friends went to sit in Union Square Park. Once there, the three women noticed a number of protestors, including individuals with musical instruments and band uniforms. At the insistence of one of the friends, WALSH and the other friend walked to 16th Street between Irving Place and Union Square East to observe the gathering more closely. As the three women arrived at Irving Place, they were blocked by a line of NYPD officers who refused to allow them to exit. Other NYPD officers, under the direction and supervision of defendant Lt. MARK KEEGAN, had similarly blocked egress from 16th Street at Union Square East.

220. Shortly thereafter, WALSH observed NYPD officers spraying people with what appeared to be mace and throwing people and musical instruments to the ground. At one point WALSH informed an NYPD officer that she was not protesting, but she was nevertheless refused permission to leave. Along with her two friends, WALSH was ordered to sit on the sidewalk, where they were eventually handcuffed and, at the decision of defendant Inspectors JAMES ESSIG and GERALD DIECKMANN, arrested, despite the total absence of probable cause for their arrests. Defendant Inspector GALATI approved these arrests.

221. Defendant P.O. ELVIS SUERO was assigned as WALSH's arresting officer and signed the criminal complaint attesting, under penalty of perjury, that WALSH engaged in conduct which SUERO did not witness and which WALSH did not commit.

222. Following her arrest, WALSH remained handcuffed for many hours, causing her pain and discomfort. She was transported to Pier 57, where she was herded into the cold, overcrowded wire cages for many hours and where she was denied water, as well as adequate toilet and sanitary facilities. NYPD officers refused to permit her to take a tampon from her belongings, which were

82

confiscated, and did not otherwise provide her with a tampon. Because the floor and walls were contaminated and filthy, Walsh developed skin rashes and irritation. After her detention, WALSH suffered from diarrhea, vomiting, and nightmares.

223. As a direct and proximate result of the defendants' wrongful policies, practices, customs and/or usages complained of herein, WALSH suffered physical injury, pain, and suffering, mental anguish, and emotional distress.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

224. The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

225. The actions and conduct and the policies, practices and customs of the defendants in subjecting the individually named plaintiffs to false arrest, malicious prosecution, malicious abuse of criminal process, excessive and unreasonable force, including excessive and unreasonable handcuffing, and excessive and unreasonable seizure, excessive detention, cruel and inhumane conditions of detention, denial of medical care, denial of access to counsel, and/or failure to accommodate disabilities, violated the plaintiffs' constitutional and civil rights as guaranteed under the Civil Rights Act of 1871, 42 U.S.C. §1983, and the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

226. As a direct and proximate result of the misconduct and abuse of authority described above, each of the individually named plaintiffs has suffered injury and damages including, *inter*

*alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

## SECOND CAUSE OF ACTION
## MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FIRST AMENDMENT

227. The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

228. By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia*, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and the arrestees' possession of valid identification, and subjecting those arrested to intolerable, cruel and inhumane conditions, the defendants, acting under pretence and color of state law, and in their individual and official capacities, and within the scope of their employment have deprived and/or will continue to deprive each and every plaintiff and member of the plaintiff classes of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First Amendment of the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. § 1983.

229. As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes have suffered and/or will continue to suffer injury and damages including, *inter alia*, deprivation of liberty, physical and

mental pain, suffering and mental anguish.

230. If the defendants' policies, practices and/or customs to punish mostly peaceful protest are not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the First Amendment to the United States Constitution.

### THIRD CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTH AMENDMENT

231. The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

232. By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia*, engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and the arrestees' possession of valid identification, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law, and in their individual and official capacities, and within the scope of their employment have deprived and/or will continue to deprive each and every plaintiff and member of the plaintiff classes of rights, remedies, privileges and immunities guaranteed to every

citizen of the United States, in violation of the Fourth Amendment of the United States Constitution, and 42 U.S.C. §1983.

233. As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes have suffered and/or will continue to suffer injury and damages including, *inter alia,* deprivation of liberty, physical and mental pain, suffering and mental anguish.

234. If the defendants' policies, practices and/or customs to punish mostly peaceful protest are not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the Fourth Amendment to the United States Constitution.

### FOURTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FIFTH & SIXTH AMENDMENT

235. The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

236. By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia,* engaging in **indiscriminate** mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted

notwithstanding the level of offence and the arrestees' possession of valid identification, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law, and in their individual and official capacities, and within the scope of their employment have deprived and/or will continue to deprive each and every plaintiff and member of the plaintiff classes of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the Fifth and Sixth Amendments of the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. §1983.

237. As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes have suffered and/or will continue to suffer injury and damages including, *inter alia,* physical and mental pain, suffering and mental anguish.

238. If the defendants' policies, practices and/or customs to punish mostly peaceful protest are not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the Fifth and Sixth Amendments to the United States Constitution.

### FIFTH CAUSE OF ACTION
### MUNICIPAL LIABILITY - 42 U.S.C. § 1983 - FOURTEENTH AMENDMENT

239. The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

240. By implementing, enforcing, encouraging, sanctioning and/or ratifying policies, practices and/or customs to punish peaceful protest during the RNC by, *inter alia,* engaging in indiscriminate mass arrests which were unlawful and without probable cause, instituting a system of perjured sworn statements to attempt to justify those unlawful arrests, instituting a system of preventive detention to keep lawful peaceful demonstrators off the streets during the height of the RNC, requiring that all persons arrested in connection with the RNC be fingerprinted notwithstanding the level of offence and the arrestees' possession of valid identification, and subjecting those arrested to intolerable and cruel and inhumane conditions, the defendants, acting under pretense and color of state law, and in their individual and official capacities, and within the scope of their employment and have deprived and/or will continue to deprive each and every plaintiff and member of the plaintiff classes of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

241. As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes have suffered and/or will continue to suffer injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

242. If the defendants' policies, practices and/or customs to punish mostly peaceful protest are not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the Fourteenth Amendment to the United States Constitution.

## SIXTH CAUSE OF ACTION
## MUNICIPAL LIABILITY – OVER BROAD ENFORCEMENT OF UNCONSTITUTIONAL NEW YORK CITY ADMINISTRATIVE CODE § 10-110

243.  The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

244.  New York City Administrative Code § 10-110 states in relevant part that "[a] procession, parade or race shall be permitted upon any street or in any public place only after a written permit therefore has been obtained from the police commissioner." Participation "in any procession, parade, or race, for which a permit has not been issued when required by this section" is punishable by a fine of up to $25 or up to 10 days in jail or both.

245.  Section 10-110 does not define the terms "procession, parade or race." During the relevant period, the NYPD defined a "parade or procession" as "any march, motorcade, caravan, promenade, foot or bicycle race, or similar event of any kind, upon any public street or roadway." 38 RCNY § 19-02(a).

246.  During the relevant period, the NYPD engaged in a policy, practice and/or custom of enforcing New York City Administrative Code § 10-110 against people arrested at or in the vicinity of RNC-related protest events. During the relevant period as many as 794 RNC-related arrestees were arrested for and charged with Parading without a Permit.

247.  Section 10-110, both on its face and as interpreted and applied by the NYPD during the relevant period, is unconstitutionally vague, impermissibly overbroad and improperly applies strict liability. During the relevant period, the NYPD also interpreted and applied Section 10-110 in an overly broad and discriminatory fashion against those arrested at or in the vicinity of RNC-related

89

protest events.

248.  By adopting, maintaining and implementing the policy, practice and/or custom of enforcing an unconstitutional law, and enforcing it in a discriminatory manner, defendant CITY OF NEW YORK deprived each and every plaintiff and member of the plaintiff classes who was arrested and charged with Parading Without a Permit of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. §1983.

249.  As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes charged with Parading Without a Permit have suffered and/or will continue to suffer injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

250.  If defendant CITY OF NEW YORK's policy, practice and/or custom of enforcing New York City Administrative Code § 10-110 is not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

### SEVENTH CAUSE OF ACTION
### MUNICIPAL LIABILITY – OVER BROAD ENFORCEMENT OF NEW YORK STATE PENAL LAW §§ 240.20[5] & [6]

251.  The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

252. New York State Penal Law § 240.20 states in relevant part that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . 5. He obstructs vehicular or pedestrian traffic; or 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." Disorderly conduct is a violation.

253. During the relevant period, the NYPD engaged in a policy, practice and/or custom of enforcing New York State Penal Law §§ 240.20[5] & [6] against people arrested at or in the vicinity of RNC-related protest events. During the relevant period at least 548 RNC-related arrestees were arrested for and charged with disorderly conduct.

254. During the relevant period, the NYPD interpreted and applied sub-sections 240.20[5] & [6] in an overly broad and discriminatory fashion against those arrested at or in the vicinity of RNC-related protest events.

255. By adopting, maintaining and implementing the policy, practice and/or custom of enforcing a law in a discriminatory manner, defendant CITY OF NEW YORK deprived and/or will continue to deprive each and every plaintiff and member of the plaintiff classes arrested for and charged with New York State Penal Law §§ 240.20[5] & [6] of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution, as incorporated against municipal actors under the Fourteenth Amendment, and 42 U.S.C. §1983.

256. As a direct and proximate result of the misconduct and abuse of authority described above, each and every plaintiff and members of the plaintiff classes charged with disorderly conduct under New York State Penal Law §§ 240.20[5] & [6] have suffered and/or will continue to suffer

injury and damages including, *inter alia*, deprivation of liberty, physical and mental pain, suffering and mental anguish.

257.   If defendant CITY OF NEW YORK's policy, practice and/or custom of enforcing New York State Penal Law §§ 240.20[5] & [6] is not enjoined, the named plaintiffs and the members of the plaintiff classes will be subjected to immediate and irreparable injury for which no adequate remedy at law exists in that members of the plaintiff class will suffer continued violations of their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution.

### EIGHTH CAUSE OF ACTION
**Supervisory Liability for Deprivation of Rights Under the United States Constitution and 42 U.S.C. §§ 1981 and 1983**

258.   The plaintiffs reallege and incorporate by reference each and every allegation above as if fully set forth herein.

259.   Defendants CITY OF NEW YORK, BLOOMBERG, KELLY, G. MCCARTHY, COHEN, HAMMERMAN, DOEPFNER, MARIN-JORDAN, ESPOSITO, ESTAVILLO, GRAHAM, SMOLKA, MONAHAN, COLGAN, MCMANUS, SCAGNELLI, PARAGALLO, O'NEILL, ESSIG, GALATI, DIECKMANN, J. SHEA, DIRUSSO, BOLOGNA, MCCARTHY, WARD, SWEET, HUGHES, HYLAND, C. MONAHAN, JASKARAN, MERCANDETTI, TRACEY, DOWLING, CROSSAN, D. SHEA, KEEGAN, WOLF, INGRAM, ROMAN, MYERS, OVANESSIAN, and RICHARD ROE defendants, acting under pretence and color of state law, and in their individual and official capacities, and within the scope of their employment, failed to remedy the wrongs committed by employees of defendant CITY OF NEW YORK under their supervision,

K.  Grant such other and further relief as this Court shall find as appropriate and just.

Dated:   New York, New York
         January 29, 2008

Respectfully submitted,

_____/s/_____
JONATHAN C. MOORE (JM 6902)
CLARE NORINS (CN 2821)
RACHEL KLEINMAN (KN 2141)

Beldock Levine & Hoffman, LLP
99 Park Avenue, Suite 1600
New York, New York 10016
(212) 490-0400


_____/s/_____
WILLIAM H. GOODMAN (WG 1241)

Goodman & Hurwitz, P.C.
1394 E. Jefferson Avenue
Detroit, Michigan 48207
(313) 567-6165

*Attorneys for the Plaintiffs and the Plaintiff Classes*